George M. Lee (SBN 172982)
**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
601 Montgomery Street, Suite 2000
San Francisco, CA 94111
Phone: (415) 979-0500
Fax:   (415) 979-0511
Email: gml@sezalaw.com

Attorneys for Plaintiffs
ARIE VAN NIEUWENHUYZEN,
THE CALGUNS FOUNDATION,
FIREARMS POLICY COALITION,
FIREARMS POLICY FOUNDATION,
SECOND AMENDMENT FOUNDATION, and
MADISON SOCIETY FOUNDATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| ARIE VAN NIEUWENHUYZEN, an individual, et al.,<br><br>　　　　Plaintiffs,<br><br>　　　vs.<br><br>STANLEY SNIFF, in his capacity as Sheriff of the County of Riverside, et al.,<br><br>　　　　Defendants. | Case No. 5:18-cv-02225-DDP-SHK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ISSUANCE OF PRELIMINARY INJUNCTION**<br><br>**[FRCP 65(a)]**<br><br>Date:　　January 7, 2019<br>Time:　　10:00 a.m.<br>Courtrm. 9C<br>Judge:　　Hon. Dean D. Pregerson |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
**Attorneys at Law**

<u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................... 1

II.   STATEMENT OF FACTS ...................................................... 1

III.  ARGUMENT ......................................................................... 3

    A. STANDARD ...................................................................... 3

    B. PLAINTIFFS HAVE SHOWN THEY WILL PREVAIL ON THE MERITS. .............. 4

        1.  Defendants' Policy Violates the Equal Protection Clause. .................. 4

        2.  Defendants' CCW Policy Violates State Law. .................................... 8

    C. PLAINTIFF WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF. ........................................................... 12

    D. THE BALANCE OF HARMS TIPS SHARPLY IN THE PLAINTIFFS' FAVOR. ...... 15

IV.   CONCLUSION ....................................................................... 17

MEMO. OF POINTS & AUTHORITIES ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......... 4, 15

*Bernal v. Fainter*, 467 U.S. 216, 104 S.Ct. 2312 (1984) ..................................... 5, 6

*Chan v. City of Troy*, 220 Mich. App. 376, 559 N.W.2d 374 (1996) ..................... 7

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F.3d 30 (2d Cir. 2010) ................................................................................. 16

*Clear Channel Outdoor, Inc. v. City of Los Angeles*,
   340 F.3d 810 (9th Cir. 2003) .............................................................................. 15

*County of Santa Clara v. Trump*, 250 F.Supp.3d 497 (N.D. Cal. 2017) ................. 4

*District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008) ................... 13

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014) .......................................................... 4

*Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673 (1976) ............................................. 12

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ......................................... 12

*Fletcher v. Haas*, 851 F.Supp.2d 287 (D. Mass. 2012) ........................................... 7

*Fotoudis v. City and County of Honolulu*, 54 F.Supp.3d 1136 (D. Haw. 2014) ...... 7

*G & V Lounge, Inc. v. Mich. Liquor Control Com'n*,
   23 F.3d 1071 (6th Cir. 1994) .............................................................................. 14

*Galvan v. Superior Court*, 70 Cal.2d 851 (1969) ................................................... 11

*Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848 (1971) .................................. 5

*Guillory v. Orange County*, 731 F.2d 1379 (9th Cir. 1984) ................................... 8

*Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554 (4th Cir. 2017) ............. 14

iii

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
**Attorneys at Law**

*Jackson v. King*, No. 212CV00421MCARHS,
   2013 WL 12329127 (D.N.M. Sept. 17, 2013) ................................................. 6, 14

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 130 S. Ct. 3020 (2010)............. 13

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ....................................... 12

*People v. Bounasri*, 31 Misc.3d 304, 915 N.Y.S.2d 921 (N.Y. City Ct. 2011)........ 7

*People v. Rappard*, 28 Cal.App. 3d 302 (Ct. App. 1972)................................... 7

*Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382 (1982) ...................................... 5

*Salute v. Pitchess*, 61 Cal.App.3d 557 (Ct. App. 1976) .................................. 10

*Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City*,
   303 F.3d 959 (9th Cir. 2002) ....................................................................... 14

*Say v. Adams*, No. 3:07-CV-377-R,
   2008 WL 718163 (W.D. Ky. Mar. 14, 2008).................................................. 6, 14

*Sippel v. Nelder*, 24 Cal.App.3d 173 (Ct. App. 1972)..................................... 11

*Smith v. South Dakota*, 781 F.Supp.2d 879 (D.S.D. 2011) ............................ 6, 14

*State v. Chumphol*, 97 Nev. 440, 634 P.2d 451 (Nev. 1981)........................... 7

*State v. Ibrahim*, 164 Wash. App. 503, 269 P.3d 292 (2011)............................ 7

*Sudomir v. McMahon*, 767 F.2d 1456 (9th Cir. 1985) .................................... 5

*Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 68 S.Ct. 1138 (1948)............ 5

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 110 S.Ct. 1056 (1990) ........... 4

*Veasey v. Wilkins*, No. 5:14-CV-369-BO,
   2015 WL 1884832 (E.D.N.C. Apr. 24, 2015)........................................................ 6

*Washington v. Trump*, 847 F.3d 1151 (9th Cir. 2017)...................................... 12

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365 (2008).......... 4
*Young v. Hawaii*, 896 F.3d 1044 (9th Cir. 2018) ............................................. 13

iv

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

**Statutes**

42 U.S.C. § 1983 ..................................................................................... 3

Cal. Govt. Code § 53071 ...................................................................... 11

Cal. Pen. Code § 12050 ........................................................................ 10

Cal. Pen. Code § 26150 ........................................................... 8, 9, 10, 16

Cal. Pen. Code § 26165 ........................................................................ 16

Cal. Pen. Code § 26175 ........................................................................ 11

**Rules**

Fed. R. Civ. Pro. 65 ............................................................................... 1

**Constitutional Provisions**

Cal. Const. art. XI, § 7 .......................................................................... 11

U.S. Const. amend. I ............................................................................. 14

U.S. Const. amend. II ...................................................................... passim

U.S. Const. amend. XIV .................................................................. passim

**Treatises**

Wright & Miller, *Federal Practice & Procedure, Civil*,
    § 2948.1 (3d ed, Sept. 2018 update).................................................. 12

//

//

//

v

**Other Authorities**

David B. Kopel, Paul Gallant and Joanne D. Eisen, *The Human Right of Self-Defense*, 22 BYU J. Pub. L. 43 (2007).................................................................. 13

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
**Attorneys at Law**

MEMO. OF POINTS & AUTHORITIES ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
*Attorneys at Law*

## I.   INTRODUCTION

Pursuant to FRCP 65(a), plaintiffs are moving this court for an order issuing a preliminary injunction which would enjoin defendants STANLEY SNIFF, in his capacity as Sheriff of the County of Riverside, the RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, and the COUNTY OF RIVERSIDE ("defendants") from enforcing, and continuing to enforce, implement or abide by their policy which prohibits non-U.S. citizens who are otherwise qualified, lawful permanent residents, not prohibited from owning firearms, from applying or obtaining a permit to carry a concealed weapon ("CCW") under state law.  The grounds for this motion are that the defendants' CCW policies violate the Equal Protection Clause of the Fourteenth Amendment, and the Second Amendment to the United States Constitution, that said policies conflict with and are otherwise preempted by applicable state law, and that plaintiff has and will continue to suffer irreparable injury in the absence of preliminary injunctive relief from such policies.

## II.   STATEMENT OF FACTS

Plaintiff Arie Van Nieuwenhuyzen has been a model immigrant and has lived an exemplary life since coming to the United States from the Netherlands in 1983.  Since 1993 he has been a Lawful Permanent Resident (LPR) of the United States, having been issued a I-551 Identification (also known as a "green card") by the U.S. Citizenship and Immigration Service.  (Decl. Arie Van Nieuwenhuyzen, ¶ 3.)  He maintains Dutch citizenship.

Mr. Van Nieuwenhuyzen moved to the United States in 1983, and since 1990, he has lived continuously in Riverside, California, where he married an American woman and raised an American family.  (Van Nieuwenhuyzen Decl., ¶ 4.)  He has owned a business, and employed people in this county, since 1987.  (Id.)  He has, throughout this time, developed substantial ties to the community, being actively involved in his church's youth program, and has taught Sunday

school there since 1995.  (Id.)  He has also been a law-abiding member of the public, and is not prohibited from owning firearms.  (Id., ¶ 5.)

On September 21, 2018, plaintiff Van Nieuwenhuyzen exercised his lawful rights guaranteed by the United State Constitution, and legally purchased a handgun, a Smith & Wesson M&P Shield, chambered in 9mm, for self-defense and recreational target shooting.  (Van Nieuwenhuyzen Decl., ¶ 6.)  Following the 10-day waiting period required by California law, plaintiff took physical possession of the handgun on October 1, 2018.  (Id.)

After taking possession of the firearm, on October 9, 2018, plaintiff Van Nieuwenhuyzen inquired of the Riverside Sheriff's Department regarding an application to carry a concealed weapon.  (Van Nieuwenhuyzen Decl., ¶ 8.)  However, he was advised by a Deputy Sheriff via email that he could not apply for a CCW, due to the Sheriff Department's policy regarding non-U.S. citizens.  (Id.)  Specifically, plaintiff was advised: "[Y]ou must be a U.S. Citizen, either born in the U.S. or naturalized, in order to apply for a CCW permit, with the Riverside County Sheriff's Department."  He was thus dissuaded and discouraged from submitting the application altogether.  (Id.)

The Riverside County Sheriff's CCW Policy, found on its website[1] (see Lee Decl., Exhibit A) ("CCW Policy")) states that any "full time resident within the County of Riverside" may apply (CCW Policy, p. 7), but further requires all applicants to provide a "[c]opy of your birth certificate and/or naturalization papers."  To substantially comply with this policy, plaintiff Van Nieuwenhuyzen was prepared to present a copy of his Dutch birth certificate, to provide his identity, and a copy of his I-551 (green card) to satisfy the "naturalization papers" requirement of the Sheriff's CCW Policy and to demonstrate his status as a Lawful Permanent Resident of the United States.  (Van Nieuwenhuyzen Decl., ¶ 7.)

---

[1]See: http://www.riversidesheriff.org/pdf/ccw/RSO-CCW-2018.pdf

MEMO. OF POINTS & AUTHORITIES ISO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1  However, he learned that the "naturalization papers" requirement is essentially a
2  U.S. citizenship requirement.  (Id., ¶ 8.)

3      Plaintiff desires equal protection of the laws, and to avail himself of the
4  CCW application process and ultimately, to obtain status as a legal CCW permit
5  holder, without regard to his status as a LPR of the United States.  (Van
6  Nieuwenhuyzen Decl., ¶ 9.)  He also and ultimately desires the ability to carry a
7  firearm for purposes of lawful self-defense.  (Id., ¶ 10.)  The Sheriff's CCW
8  Policy, however, prevents him from obtaining a CCW permit, and thus, carrying a
9  handgun in a concealed manner for self-defense.  (Id.)  Plaintiff is otherwise
10 qualified, and is able to comply with the CCW state requirements. (Id., ¶ 11.)

11     Plaintiffs filed the instant action on October 19, 2018, seeking remedies
12 pursuant to 42 U.S.C. § 1983, including declaratory and injunctive relief,
13 challenging the defendants' policies, customs and practices that violate the
14 Constitution and the law.  Institutional plaintiffs Calguns Foundation, Firearms
15 Policy Coalition and Firearms Policy Coalition have individual members and
16 supporters residing in Riverside County, California, who are or would be adversely
17 affected by the defendants' CCW Policy.  (Decl. Brandon Combs, ¶ 6.)  But for the
18 policies at issue, these organizations' members who are lawful permanent residents
19 residing within the County of Riverside (including plaintiff Van Nieuwenhuyzen)
20 would apply for CCW licenses and carry firearms for their own self-defense, but
21 they refrain from carrying firearms for fear of arrest, prosecution, fine and
22 incarceration.  (Id.)

### III.   ARGUMENT

**A.   STANDARD**

26 "The standard for issuing a preliminary injunction is well established: [¶] "A
27 plaintiff seeking a preliminary injunction must establish [1] that he is likely to
28 succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

3

of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct. 365 (2008)); *County of Santa Clara v. Trump*, 250 F.Supp.3d 497, 513 (N.D. Cal. 2017). "This has been interpreted as a four-part conjunctive test, not a four-factor balancing test. However, the Ninth Circuit has held that a plaintiff may also obtain an injunction if he has demonstrated 'serious questions going to the merits' that the balance of hardships 'tips sharply' in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public interest." *County of Santa Clara v. Trump*, 250 F.Supp.3d at 513 (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011)).

**B.    PLAINTIFFS HAVE SHOWN THEY WILL PREVAIL ON THE MERITS.**

**1.    Defendants' Policy Violates the Equal Protection Clause.**

Plaintiffs are entitled to preliminary injunctive relief, primarily on the grounds that defendants' CCW Policy violates the Equal Protection Clause. Every court that has considered such challenges to similar state laws and policies has applied strict scrutiny to such laws or policies, and has uniformly found that such policies preventing lawful permanent residents from carrying (or possessing) firearms, based upon non-citizen status, violates the Equal Protection Clause.

First, it is well established and beyond dispute that Lawful Permanent Residents are subject to protection of fundamental Constitutional guarantees. "'[T]he people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 110 S.Ct. 1056, 1061 (1990). This has long been held to apply to rights

4

guaranteed by the Fourteenth Amendment, which provides: "'Nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.' It has long been settled, and it is not disputed here, that the term 'person' in this context encompasses lawfully admitted resident aliens as well as citizens of the United States and entitles both citizens and aliens to the equal protection of the laws of the State in which they reside." *Graham v. Richardson*, 403 U.S. 365, 371, 91 S.Ct. 1848, 1851 (1971) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 6 S.Ct. 1064 (1886)). "'The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under nondiscriminatory laws.'" *Graham*, 403 U.S. 365, 374, 91 S.Ct. 1848 (citing *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 420, 68 S.Ct. 1138, 1143 (1948)).

And thus, "[a]s a general matter, a state law that discriminates on the basis of alienage can be sustained only if it can withstand strict judicial scrutiny." *Bernal v. Fainter*, 467 U.S. 216, 219, 104 S.Ct. 2312, 2315 (1984) (citing *Graham*, 403 U.S. at 372, 91 S.Ct. at 1852). In order to withstand strict scrutiny, the law must advance a compelling state interest by the least restrictive means available. *Bernal*, 467 U.S. at 219, 104 S.Ct. at 2315. "To justify a law disadvantaging aliens—like any law discriminating against a 'suspect class'—a state must demonstrate 'that its classification has been precisely tailored to serve a compelling governmental interest.'" *Sudomir v. McMahon*, 767 F.2d 1456, 1465 (9th Cir. 1985) (citing *Plyler v. Doe*, 457 U.S. 202, 217, 102 S.Ct. 2382, 2395 (1982); *Graham*, 403 U.S. at 370–76).

Considering plaintiffs' Equal Protection claim here, it is clear that defendants' CCW Policy is subject to strict scrutiny, as it distinguishes Lawful Permanent Residents from U.S. Citizens, without any basis, rational or otherwise.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1  Defendants bear the burden of showing that their CCW Policy discriminating

2  against Lawful Permanent Residents advances some compelling state interest,

3  using the least restrictive means available.  This they cannot do.  As the Court in

4  *Bernal* noted, "Only rarely are statutes sustained in the face of strict scrutiny.  As

5  one commentator observed, strict-scrutiny review is 'strict' in theory but usually

6  'fatal' in fact."  *Bernal*, 467 U.S. at 220, 104 S. Ct. at 2316, fn. 6.

7          In fact, we will take the Court's observation in *Bernal* one step further:

8  concealed carry statutes and policies discriminating against Lawful Permanent

9  Residents have *never* survived judicial review.  In fact, every district court to have

10  considered this same issue now before the Court has ruled in favor of plaintiffs

11  seeking similar challenges, under strict scrutiny, and each has granted some form

12  of preliminary or permanent injunctive relief.  See, *Veasey v. Wilkins*, No. 5:14-

13  CV-369-BO, 2015 WL 1884832, at *1 (E.D.N.C. Apr. 24, 2015) (plaintiffs

14  demonstrated entitlement to preliminary injunction enjoining North Carolina

15  statute requiring proof of U.S. Citizenship prior to obtaining a concealed carry

16  permit); *Jackson v. King*, No. 212CV00421MCARHS, 2013 WL 12329127, at *8

17  (D.N.M. Sept. 17, 2013) (granting summary judgment in plaintiffs' favor in

18  challenging New Mexico's Concealed Carry Handgun Act, finding that it

19  discriminates against a suspect class and was not narrowly tailored to achieve the

20  government's compelling interest in public safety); *Smith v. South Dakota*, 781

21  F.Supp.2d 879, 887 (D.S.D. 2011) (granting preliminary injunction preventing

22  enforcement of South Dakota statute requiring citizenship for a permit to carry a

23  concealed pistol); *Say v. Adams*, No. 3:07-CV-377-R, 2008 WL 718163, at *4

24  (W.D. Ky. Mar. 14, 2008) (granting injunction prohibiting enforcement of

25  Kentucky law that prevented lawful permanent residents from applying for

26  concealed carry license).

27          Likewise, every state court (including a California Court of Appeal) that

28  considered the closely related issue regarding the criminalization of possession of

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

6

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

1   firearms by non-citizens, to the extent they encompassed lawful permanent

2   residents here legally, also struck those statutes as violative of Equal Protection

3   principles.  See, e.g., *People v. Rappard*, 28 Cal.App. 3d 302, 305 (Ct. App. 1972)

4   (former California statute prohibiting ownership or carrying of concealable

5   firearms was impermissible classification that did not pass strict scrutiny); *People*

6   *v. Bounasri*, 31 Misc.3d 304, 307, 915 N.Y.S.2d 921 (N.Y. City Ct. 2011) (striking

7   New York Penal Law provision which criminalized possession of a weapon by a

8   non-U.S. citizen, noting "[t]here is no conceivable reason that aliens should be

9   distinguished from citizens to achieve the law's otherwise legitimate public safety

10  objectives"); *Chan v. City of Troy*, 220 Mich. App. 376, 380, 559 N.W.2d 374, 376

11  (1996) (citizenship requirement of Michigan law prohibiting lawful permanent

12  residents from purchasing or carrying firearms violated the Equal Protection

13  Clause of the Fourteenth Amendment); *State v. Chumphol*, 97 Nev. 440, 441, 634

14  P.2d 451 (Nev. 1981) (Nevada statute criminalizing possession of a pistol by an

15  "unnaturalized foreign-born person" failed to survive strict scrutiny); *State v.*

16  *Ibrahim*, 164 Wash. App. 503, 269 P.3d 292 (2011) (Washington State statute

17  requiring aliens to register all firearms denied lawful permanent resident's right to

18  equal protection of law by denying his Second Amendment right to keep and bear

19  arms).  Federal district courts have also reviewed and enjoined the enforcement of

20  such statutes.  *See*, *Fletcher v. Haas*, 851 F.Supp.2d 287, 288 (D. Mass. 2012)

21  (enjoining enforcement of Massachusetts statute prohibiting firearm possession by

22  lawfully admitted aliens); *Fotoudis v. City and County of Honolulu*, 54 F.Supp.3d

23  1136, 1143 (D. Haw. 2014) (denial of resident of the opportunity to apply for a

24  permit to purchase a firearm violated the Equal Protection Clause).

25      In the present case, the discrimination is embodied with a local Sheriff's

26  policy which prevents CCW applications from even being submitted by non-U.S.

27  citizens, thus specifically excluding Lawful Permanent Residents from

28  consideration.  (Van Nieuwenhuyzen Decl., ¶ 8.)  As in each of the cases cited

1    above – both as to the concealed-carry cases and the firearm permitting cases

2    generally – defendants here cannot possibly articulate any compelling or

3    substantial state interest in treating otherwise law-abiding non-citizens differently

4    in the licensure of the carrying of handguns that would justify its discrimination.

5    "A law that is administered so as to unjustly discriminate between persons

6    similarly situated may deny equal protection." *Guillory v. Orange County*, 731

7    F.2d 1379, 1383 (9th Cir. 1984).  These laws include the "policies and customs" of

8    a sheriff in denying CCW applications.  *Id*., at 1382.  In light of the abundant and

9    uniformly-decided authorities cited above, it is clear that defendants' CCW Policy

10   which discriminates against Lawful Permanent Residents cannot withstand strict

11   scrutiny, and its enforcement, implementation and adherence to this aspect of this

12   Policy must be enjoined.

13

14        **2.      Defendants' CCW Policy Violates State Law.**

15        Plaintiffs will further show that they will prevail on the merits of their claim,

16   as a matter of law, as defendants' CCW Policy is clearly prohibited by state law,

17   which solely sets forth what is required for CCW qualification and issuance, and

18   which completely preempts local ordinances, regulations and policies which

19   conflict with that law.

20        In the first place, the Sheriff has no discretion to refuse to accept

21   applications from non-U.S. citizens who are otherwise qualified.  Though local

22   sheriffs are certainly vested with some discretion to review and approve of CCW

23   applications generally, they may not engage in a wholesale refusal of such

24   applications based upon criteria that are not provided for by state law.  This is

25   tantamount to a refusal to exercise discretion, not the actual exercise of discretion

26   itself.

27        The statutory scheme governing the issuance of CCW permits, and the

28   criteria to be utilized, is set forth in Pen. Code § 26150, which provides that the

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

8

sheriff of a county may issue a concealed carry license to a person upon proof of all of the following:

> (1) The applicant is of good moral character.
>
> (2) Good cause exists for issuance of the license.
>
> (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business.
>
> (4) The applicant has completed a course of training as described in Section 26165.

Pen. Code § 26150, subdiv. (a).  Each county sheriff may define "good cause" differently, but the Riverside Sheriff's CCW Policy generally describes the good cause requirement as follows:

> Good cause is an individual issue. Penal Code Section §26150(a) gives extremely broad discretion to the Sheriff concerning the issuance of concealed weapons licenses, and explicitly grants discretion to the issuing agency to issue or not issue a license to applicants meeting the minimum statutory requirements.

(CCW Policy, p. 4.)

And while it is true that local sheriffs are vested with broad discretion in the issuance of CCW permits, if they meet those "minimum statutory requirements," it is clear that defendants' CCW Policy amounts to a *refusal* to exercise such discretion, based solely on a U.S. citizenship requirement that does not otherwise exist under state law.  This, in effect, discourages and prevents non-U.S. citizens such as plaintiff Van Nieuwenhuyzen from even applying in the first place. (Van Nieuwenhuyzen Decl., ¶ 8.)  Thus, even if a non-citizen would be able to demonstrate *extremely* good cause (such as direct credible threats from a known potential assailant), he or she would not even be able to present that "good cause" solely by virtue of their status as a Lawful Permanent Resident.

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1    Such a refusal to exercise such discretion is clearly prohibited, and is

2    particularly acute when the basis for the refusal to exercise its discretion is

3    discriminatory.  Likewise, in *Salute v. Pitchess*, 61 Cal.App.3d 557 (Ct. App.

4    1976), the appellants contended that the Sheriff of Los Angeles County wrongfully

5    "refused to exercise" its discretion.  In *Salute*, the sheriff had a fixed policy of not

6    granting applications under section 12050 (the predecessor to § 26150).  The Court

7    of Appeal reversed the trial court's dismissal, essentially compelling the sheriff to

8    exercise its discretion on an individual basis on every application under section

9    12050.  61 Cal.App.3d at 560-561.  The court stated: "While a court cannot compel

10   a public officer to exercise his discretion in any particular manner, it may direct

11   him to exercise that discretion. We regard the case at bench as involving a refusal

12   of the sheriff to exercise the discretion given him by the statute.  Section 12050

13   imposes only three limits on the grant of an application to carry a concealed

14   weapon: the applicant must be of good moral character, show good cause and be a

15   resident of the county. To determine, in advance, as a uniform rule, that only

16   selected public officials can show good cause is to refuse to consider the existence

17   of good cause on the part of citizens generally and is an abuse of, and not an

18   exercise of, discretion."  *Salute*, 61 Cal.App.3d at 560.

19   In the present case, defendants are effectively refusing to exercise any

20   discretion they may otherwise have to consider CCW applications, and it is based

21   entirely on an improper classification.  Therefore, it is an *abuse* of discretion, not

22   the exercise thereof.  Defendants' policy should not prevent Lawful Permanent

23   Residents who otherwise meet the criteria of section 26150 from even applying in

24   the first place.

25   Secondly, plaintiffs will also prevail on the merits, as the defendants' CCW

26   Policy clearly conflicts with, and is preempted by, applicable state law.  "A county

27   or city may make and enforce within its limits all local, police, sanitary, and other

28   ordinances and regulations not in conflict with general laws."  Cal. Const. art. XI, §

10

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

7.  And Cal. Govt. Code § 53071 expressly states: "It is the intention of the Legislature to occupy the whole field of regulation of the registration or licensing of commercially manufactured firearms as encompassed by the provisions of the Penal Code, and such provisions shall be exclusive of all local regulations, relating to registration or licensing of commercially manufactured firearms, by any political subdivision[.]"  The enactment of this provision (previously found at Govt. Code § 9619) was in response to the California Supreme Court's decision in *Galvan v. Superior Court*, 70 Cal.2d 851 (1969), and which "effectively eliminated any doubt as to the legislative intent to occupy the entire field of registration and licensing of firearms."  *Sippel v. Nelder*, 24 Cal.App.3d 173, 176 (Ct. App. 1972) (finding that San Francisco ordinances effectively preventing a resident from purchasing a concealable firearm without a permit from the police department was preempted by state law).

Here, the controlling statutes make it clear that a local issuing agency cannot require more information than that which is required by the Code.  Specifically, Cal. Penal Code § 26175 expressly provides:

> (a)(1) Applications for licenses, applications for amendments to licenses, amendments to licenses, and licenses under this article shall be uniform throughout the state, upon forms to be prescribed by the Attorney General.
>
> [. . .]
>
> (g) An applicant *shall not be required to complete any additional application or form for a license, or to provide any information other than that necessary to complete the standard application form described in subdivision (a)*, except to clarify or interpret information provided by the applicant on the standard application form.

Pen. Code § 26175(a), (g) (emphasis added).  Thus, insofar as the defendants' CCW Policy requires additional information, such as "proof" of a citizenship requirement that is not expressly provided for by section 26175(a), it is expressly preempted by controlling state law.

1   Simply stated, defendants cannot manufacture a citizenship requirement

2   where none exists under state law, and plaintiffs will independently prevail on this

3   ground as well.

4

5   **C.     PLAINTIFF WILL SUFFER IRREPARABLE INJURY IN THE ABSENCE OF
        PRELIMINARY INJUNCTIVE RELIEF.**

6

7   Plaintiff has been deprived of not only the ultimate ability to carry a

8   handgun for self-defense in public, but the ability even to apply for a CCW permit

9   in the first place.  As stated above, plaintiff has Equal Protection interests at stake,

10  and defendants' CCW Policy unlawfully discriminates against non-citizen Lawful

11  Permanent Residents who would otherwise be qualified to apply for and carry

12  firearms for self-defense.  "It is well established that the deprivation of

13  constitutional rights 'unquestionably constitutes irreparable injury."  *Melendres v.*

14  *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347,

15  373, 96 S.Ct. 2673 (1976)); see also, *Washington v. Trump*, 847 F.3d 1151, 1169

16  (9th Cir. 2017); Wright & Miller, *Federal Practice & Procedure, Civil*, § 2948.1

17  (3d ed, Sept. 2018 update) ("When an alleged deprivation of a constitutional right

18  is involved, such as the right to free speech or freedom of religion, most courts

19  hold that no further showing of irreparable injury is necessary.")  See also, *Ezell v.*

20  *City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (the Second Amendment

21  protects similarly intangible and unquantifiable interests, the infringements of

22  which "cannot be compensated by damages").

23  Denial of the right even to *apply* for a CCW permit – without even

24  considering whether an applicant would have "good cause" required by state law –

25  deprives an entire class of otherwise qualified persons who may be in dire need of

26  the ready ability to defend themselves, giving rise to plaintiffs' Second

27  Amendment claim as well.  If the right to self-defense is a universal, human right,

28  and not merely a privilege of citizenship, it cannot be denied to "the People" who

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
**Attorneys at Law**

12

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1 are not citizens.  "Self-defense is a basic right, recognized by many legal systems

2 from ancient times to the present day, and in *Heller*, we held that individual self-

3 defense is "the central component."  *McDonald v. City of Chicago, Ill.*, 561 U.S.

4 742, 767, 130 S. Ct. 3020, 3036 (2010) (citing *District of Columbia v. Heller*, 554

5 U.S. 570, 599, 128 S.Ct. 2783, 2801-2802 (2008)).  See also, David B. Kopel, Paul

6 Gallant and Joanne D. Eisen, *The Human Right of Self-Defense*, 22 BYU J. Pub. L.

7 43, 104-130 (2007) (surveying historical legal systems, including Greek, Jewish,

8 Roman, Islamic and western traditions, to find a fundamental right of self-defense

9 in each system.)  Today, thirty-seven American state constitutions include the

10 explicit right of personal self-defense, sometimes stated in conjunctions with an

11 arms right, and sometimes stated independently.  *Id.*, at 128, fn. 444.

12     Indeed, it is widely recognized that the Second Amendment does not, itself

13 *grant* the People the right to keep and bear arms, but codified a pre-existing

14 universal right of self-defense.  On this point, all nine Justices of the Supreme

15 Court – even those Justices dissenting in *Heller* – agreed.  See, *Heller*, 554 U.S. at

16 592, 128 S.Ct. at 2797 ("[t]he very text of the Second Amendment implicitly

17 recognizes the pre-existence of the right"), and 554 U.S. at 652, 128 S.Ct. at 2831

18 (Stevens, J., dissenting).

19     And thus, irrespective of whether the Second Amendment applies to

20 circumstances outside of the home – and we certainly contend that it does (see,

21 *Young v. Hawaii*, 896 F.3d 1044, 1074 (9th Cir. 2018) ("for better or for worse, the

22 Second Amendment does protect a right to carry a firearm in public for self-

23 defense") – the fact is, the defendants' CCW Policy here effectively deprives an

24 entire class of persons, based upon alienage, of the right to submit a statement of

25 good cause that implicates the right.

26     Plaintiffs have made a clear showing that the defendants' CCW Policy

27 violates the Equal Protection Clause, and at least gives rise to a Second

28 Amendment claim.  The courts considering these claims have agreed that

13

SEILER EPSTEIN ZIEGLER & APPLEGATE LLP
Attorneys at Law

1   deprivation of equal protection of the laws further amounts to irreparable

2   constitutional injury justifying an injunction.  See, *Jackson v. King*, *supra*, 2014

3   WL 12796777, at *5 (plaintiffs made a showing of irreparable harm in the absence

4   of permanent injunctive relief from New Mexico's Concealed Handgun Carry Act

5   that discriminated against non-U.S. citizens); *Say v. Adams*, *supra*, 2008 WL

6   718163, at *3 (W.D. Ky. Mar. 14, 2008) (a violation of the Equal Protection

7   Clause against non-U.S. citizens in concealed carry licensing qualifies as an

8   irreparable injury, especially when considered in light of the plaintiff's likelihood

9   of success on the merits.); *Smith v. S. Dakota*, *supra*, 781 F.Supp.2d at 887

10   (plaintiff demonstrated that he was unconstitutionally discriminated against on the

11   basis of his alienage, and therefore, that he will suffer irreparable harm if not

12   granted injunctive relief).

13         In the analogous First Amendment context, "a plaintiff's claimed irreparable

14   harm is inseparably linked to the likelihood of success on the merits."  *Int'l*

15   *Refugee Assistance Project v. Trump*, 857 F.3d 554, 601-602 (4th Cir. 2017), as

16   amended, cert. granted, 137 S. Ct. 2080, 198 L. Ed. 2d 643 (2017), and vacated

17   and remanded on other grounds sub nom. *Trump v. Int'l Refugee Assistance*, 138

18   S.Ct. 353 (2017).  "Accordingly, [a] finding that Plaintiffs are likely to succeed on

19   the merits of their constitutional claim counsels in favor of finding that in the

20   absence of an injunction, they will suffer irreparable harm."  *Id*.  Similarly, "it is

21   always in the public interest to prevent the violation of a party's constitutional

22   rights." *Sammartano v. First Judicial Dist. Court, in & for Cty. of Carson City*,

23   303 F.3d 959, 974 (9th Cir. 2002) (quoting *G & V Lounge, Inc. v. Mich. Liquor*

24   *Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)).

25         Unless and until the defendants are so restrained and enjoined here, plaintiff

26   Van Nieuwenhuyzen and other Lawful Permanent Residents of Riverside County

27   will be deprived the ability even to submit a CCW application, and to exercise such

28   rights afforded by a CCW permit, in violation of the Equal Protection Clause, and

1    the rights guaranteed under the Fourteenth and Second Amendments to the United

2    States Constitution.  (Van Nieuwenhuyzen Decl., ¶ 12.)  This amounts to

3    irreparable injury, justifying injunctive relief.

4

5    **D.**    **THE BALANCE OF HARMS TIPS SHARPLY IN THE PLAINTIFFS' FAVOR.**

6       As the abundant authority above demonstrates, plaintiffs are likely to prevail

7    on the merits of their Equal Protection claim.  However, absent relief, they will

8    continue to suffer irreparable injury in the loss of their right to non-discriminatory

9    treatment by their Sheriff, in addition to the loss of an aspect to self-defense in

10    public.  On the other hand, the defendants can state and otherwise have no

11    legitimate interest in continuing to enforce its suspect classification based upon

12    nationality alone, and the public interest strongly favors equal protection of the

13    laws, and the right of all law-abiding persons – both citizens and non-citizens alike

14    – to the fundamental, human right of self-defense.

15       "'How strong a claim on the merits is enough depends on the balance of

16    harms: the more net harm an injunction can prevent, the weaker the plaintiff's

17    claim on the merits can be while still supporting some preliminary relief.'"

18    *Alliance for the Wild Rockies v. Cottrell*, *supra*, 632 F.3d at 1133 (quoting *Hoosier*

19    *Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725

20    (7th Cir. 2009)).  Thus, preliminary relief is proper "where the likelihood of success

21    is such that 'serious questions going to the merits were raised and the balance of

22    hardships tips sharply in [plaintiff's] favor.'" *Cottrell*, at 1131-1132 (quoting *Clear*

23    *Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003);

24    that is, where the court "cannot determine with certainty that the moving party is

25    more likely than not to prevail on the merits of the underlying claims, but where

26    the costs outweigh the benefits of not granting the injunction.'" *Cottrell*, at 1133

27    (quoting *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund*

28    *Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)).

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

**SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**
Attorneys at Law

1    In the present case, an examination of the relative burdens shows that this is
2   not even a close call.  On the one hand, without injunctive relief, plaintiff Van
3   Nieuwenhuyzen and other Lawful Permanent Residents cannot even *apply* to the
4   Riverside Sheriff for issuance of a CCW, no matter how compelling the "good
5   cause" or other individual reasons for wanting to carry weapons they may have.
6   On the other hand, the only thing that an injunction here would compel is for the
7   Riverside Sheriff to *accept* non-citizen CCW applications for ordinary processing,
8   not necessarily that they must *approve* them.  This would not be not an open door
9   for the issuance of CCW permits to otherwise unqualified people.  All applicants
10  must still, of course, pass necessary background checks and otherwise meet the
11  statutory requirements of Pen. Code § 26150, and be willing to undergo the
12  training required by section 26165, as plaintiff Van Nieuwenhuyzen is.  (Van
13  Nieuwenhuyzen Decl., ¶ 11.)

14    Unless and until the defendants are so restrained and enjoined, however,
15  such persons, including the institutional plaintiffs' members and supporters
16  residing in Riverside County, will be deprived of their ability to submit CCW
17  applications, and exercise such rights afforded by a CCW license, in violation of
18  the Equal Protection Clause, and the rights guaranteed under the Fourteenth and
19  Second Amendments to the United States Constitution.  (Combs Decl., ¶ 7.)
20  Accordingly, the balance of relative harms tips sharply in the plaintiffs' favor, and
21  preliminary injunctive relief should be granted to them.  Plaintiffs are therefore
22  requesting that this Court enjoin defendants from continuing to enforce their CCW
23  Policy insofar as it prevents Lawful Permanent Residents from applying for and
24  obtaining CCW licenses that would otherwise be available to U.S. citizens.  (Van
25  Nieuwenhuyzen Decl., ¶ 13; Combs Decl., ¶ 8.)
26  //
27  //
28  //

16

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court grant them an order granting a preliminary injunction, enjoining defendants from enforcing, and continuing to enforce, implement or abide by its CCW Policy to the extent that it prohibits non-U.S. citizens who are otherwise qualified, lawful permanent residents, not prohibited from owning firearms, from applying or obtaining a permit to carry a concealed weapon otherwise available under state law.

Dated: November 29, 2018          **SEILER EPSTEIN ZIEGLER & APPLEGATE LLP**

                                  /s/ George M. Lee
                                  George M. Lee

                                  Attorney for Plaintiffs

17